UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

ERIC WORKMAN,                                )
                                             )
                    Plaintiff,               )
                                             )          1:10-cv-0293-SEB-TAB
         vs.                                 )
                                             )
GREENWOOD COMMUNITY SCHOOL  )
CORPORATION, and PRINCIPAL,    )
GREENWOOD HIGH SCHOOL, in his  )
official capacity,                           )
                                             )
                    Defendant.              )


**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

Each year, Greenwood High School ("Greenwood" or "the School"), the public

high school for students residing within the Defendant Greenwood Community School

Corporation district ("the District"), invites the senior class president, vice president,

valedictorian, and salutatorian to speak at the commencement ceremony for the class of

graduating high school seniors.  Dec. of Kaylor ¶¶ 5, 7.  The District also maintains a

policy under which a student may be permitted to lead graduating students and the

audience at the ceremony in an invocation or brief, nondenominational prayer.  Compl. ¶

9; Dec. of Kaylor ¶¶ 5, 7-8.  All those present at the graduation are expected to remain

respectfully silent during all commencement remarks, including the student-led prayer.

Dec. of Kaylor ¶ 18.

        For some time, Greenwood's custom and practice has been to allow the members

of the senior class to vote on whether or not to include a student-led prayer in the formal graduation ceremony. Compl. ¶ 9. If the students vote in favor of incorporating a prayer, the class secretary or treasurer is typically asked to lead it. Dec. of Kaylor ¶ 19. Consistent with this custom, in September of 2009, during school hours, all Greenwood seniors were required to attend an assembly, at which Greenwood staff distributed ballots, which had been drawn up and printed by school personnel. Compl. ¶ 15. Those ballots instructed the students as follows: "You may, as a class, decide to have a class prayer at your graduation ceremony. If you choose to have a prayer it will be non-denominational & be led by a member of your class. Please vote YES or NO below." Dec. of Kaylor (Ex. M); Compl. ¶¶ 18-19. The students voted as instructed, and the completed ballots were collected by Greenwood staff members, after which point the students returned to their classes. Compl. ¶ 20.

Plaintiff Eric Workman is currently a senior at Greenwood. Compl. ¶ 10. He is ranked first in his class and thus anticipates not only attending the graduation scheduled for May 28, 2010, but also speaking at the ceremony as the class valedictorian. Compl. ¶¶ 11, 22. Although the results of the student vote were apparently not revealed at the school assembly, Mr. Workman was thereafter informed, and Greenwood has confirmed in its submissions to the Court, that the senior class voted in favor of including a prayer in the graduation program and that either the senior class secretary or treasurer will offer a prayer this year as a part of the ceremony. Aff. of Workman ¶ 2; Compl. ¶ 21; Dec. of Kaylor ¶ 19.

2

According to the District, this year's prayer is intended to comport with tradition at the School, in that the speaker leading the prayer, as with all student speakers, will determine the content of his or her own remarks.  Dec. of Kaylor ¶ 8, 10.  However, each student graduation speaker must submit a written copy of his or her planned remarks to the School's principal, who will read all such submissions, including any prayer, prior to their presentation at commencement.  Id. at ¶ 8. The principal's review of the remarks is intended to ensure that each student will stay within the allotted time limit of three to four minutes and that the content of each speech will not be "inappropriate to the occasion . . . consistent with the School's authority to limit student speech."  Id.

Presently, the District intends to permit four or five graduating seniors to present speeches as part of the commencement ceremony, including the planned prayer.  As of the time of the parties' submissions, Greenwood's principal had not yet received for review the text of any speech planned for presentation during the 2010 program.  Id. at ¶ 11.

Mr. Workman has filed this lawsuit objecting to the planned prayer and to the process the District has undertaken at the School pursuant to which a majority of students were authorized to decide whether or not a prayer will be presented during and as part of the graduation ceremony.  Mr. Workman seeks a Preliminary Injunction [Docket No. 7] to nullify the results of the student election and to enjoin the District from including any prearranged, predetermined student-led prayer as part of the upcoming graduation ceremony.

3

## _Legal Analysis_

### I.      _Justiciability and Standing_

#### A.      _Ripeness_

Greenwood first contends that Mr. Workman's Motion for Preliminary Injunction must be denied because his claim is unripe, and therefore nonjusticiable, and because he lacks standing to bring the claim.  Greenwood's ripeness argument is easily dispensed with in light of Supreme Court precedent in the school prayer context.  In <u>Santa Fe Indep.</u> <u>School Dist. v. Doe</u>, 530 U.S. 290 (2000), the school district defendant argued, as the District here does, that the challenge was premature because, "until a student actually delivers a solemnizing message under the latest version of the policy, there can be no certainty that any of the statements or invocations will be religious."  530 U.S. at 313.

The Court rejected this ripeness argument, reasoning that the school's policy, which enabled an election to decide whether or not a prayer would be offered, was itself a constitutional violation.  <u>Id.</u> at 314-15.  The student was not obligated to wait for the prayer, which was the product of the ripe constitutional violation, to occur in order to bring the suit: "[w]e need not wait for the inevitable to confirm and magnify the constitutional injury."  <u>Id.</u> at 316; <u>see also</u> <u>Lee v. Weisman</u>, 505 U.S. 577, 584 (1992). Accordingly, Mr. Workman's claim, brought both to challenge the constitutionality of the District's established policy relating to graduation prayer and to enjoin an imminent graduation prayer that is practically certain to occur as the result of that policy, is clearly ripe.

B.     *Standing*

The District further contends that Mr. Workman does not have standing to bring his claim because he cannot demonstrate an injury in fact redressable by the relief he requests.  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 597-98 (2007) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)).  The three requisite elements of Article III standing are well established: (1) "injury in fact," which is (2) "fairly traceable to challenged action of the defendant," and (3) that likely could be redressed by a decision favorable to the plaintiff. Lujan v. Public Defs. of Wildlife, 504 U.S. 555, 560 (1992).

The District argues that Mr. Workman cannot show an "injury in fact" because he has not suffered an "invasion of a legally protected interest" that is either "concrete and particularized" or "actual and imminent."  Id.; Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 482-90 (1982). The District relies on the principle that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms."  Valley Forge, 454 U.S. at 485-86.

Prior to and since Valley Forge, however, the Supreme Court has made it clear that children confronted with prayer in the public school setting, whether past or forthcoming,

5

possess the requisite standing to challenge that practice.  See Wallace v. Jaffree, 472 U.S. 38 (1985); School Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203 (1963). Significantly, in a more recent case dealing with many of the same issues presented here, the Court held, essentially without question, that the student-plaintiff had standing to challenge a forthcoming prayer.  Lee, 505 U.S. at 584 (conferring standing and noting that, "from the record it appears likely, if not certain, that an invocation and benediction will be conducted at [the] high school graduation.").

A person who alleges "direct and unwelcome exposure to a religious message" has articulated an injury and thus has standing to bring an Establishment Clause challenge. Books v. City of Elkhart, Indiana, 235 F.2d 292, 299 (7th Cir. 2000) (quoting Doe v. County of Montgomery, 41 F.3d 1156, 1159 (7th Cir. 1994)).  Consistent with Lee, Books, and numerous other cases, we conclude that Mr. Workman has alleged such an injury in fact and has therefore satisfied the first element of Article III standing.

The District also contends that Mr. Workman cannot meet the second and third elements of Article III standing because the conduct he is targeting is that of a student, not of the School itself.  In advancing this argument, however, the District mischaracterizes the facts of the case and the nature of Mr. Workman's challenge. Greenwood proactively devised and fostered a student election, which directly (and not surprisingly) resulted in the prayer that is scheduled to be given at the upcoming graduation.  Mr. Workman challenges not only the planned student prayer but also the election process devised by the school that enabled that prayer.  Thus, his claim is "fairly

traceable to challenged action of the defendant." Lujan, 504 U.S. at 560.

Similar to the claim brought by the plaintiff in Santa Fe, Mr. Workman's constitutional challenge targets the District's practice of devising an electoral process that permits, indeed, almost guarantees, that a graduation prayer will be included in the commencement ceremonies.  His injunction, if granted, will have the effect of declaring that process unconstitutional, thereby nullifying that election's results and preventing the formalized, school-sanctioned and sponsored prayer to occur at the upcoming graduation. Accordingly, a decision favorable to Mr. Workman will redress the injury he has articulated.  Lujan, 504 U.S. at 560.

For these reasons, Mr. Workman clearly has standing to bring the present claim and to seek an injunction against the District's practice permitting a formal graduation prayer.

## II.  *Preliminary Injunction Standard*

The grant of injunctive relief is appropriate if the moving party is able to demonstrate: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if preliminary relief is denied; and (3) an inadequate remedy at law.  Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008).  If the moving party fails to demonstrate any one of these three threshold requirements, the emergency relief must be denied.  Id.  However, if these threshold conditions are met, the Court must then assess the balance of harm – the harm

7

to Plaintiffs if the injunction is not issued against the harm to Defendant if it is issued –
and, where appropriate, also determine what effect the granting or denying of the
injunction would have on nonparties (the public interest).  Id.

    In determining whether to grant injunctive relief, the district court must take into
account all four of these factors and then "exercise its discretion 'to arrive at a decision
based on the subjective evaluation of the import of the various factors and a personal,
intuitive sense about the nature of the case."  Id. (quoting Lawson Products, Inc. v. Avnet,
Inc., 782 F.2d 1429, 1436 (7th Cir. 1986)).  This process involves engaging in what is
called the "sliding scale" approach, meaning that "the more likely it is the plaintiff will
succeed on the merits, the less balance of irreparable harms need weigh toward its side;
the less likely it is the plaintiff will succeed, the more the balance need weigh towards its
side."  Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992).  The
sliding scale approach "is not mathematical in nature, rather 'it is more properly
characterized as subjective and intuitive, one which permits district courts to weigh the
competing considerations and mold appropriate relief.'"  Ty, Inc. v. Jones Group, Inc.,
237 F.3d 891, 895-96 (7th Cir. 2001) (quoting Abbott Laboratories, 971 F.2d at 12).


A.    *Likelihood of Success on the Merits*

    The issues implicated by the Establishment Clause of the First Amendment often
constitute themselves as an analytical thicket, waiting to ensnare federal courts, not only
in significant, if touchy, ideological issues, but also in the "brain-spun" test articulated by

the Supreme Court in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).  <u>McCreary County, Ky.</u>

<u>v. American Civil Liberties Union of Ky.</u>, 545 U.S. 844, 890 (2005) (Scalia, J.

dissenting).  In the context of prayer in the public schools, however, the Court has blazed

a clearer trail.

In <u>Lee v. Weisman</u>, 505 U.S. 577 (1992), the Court addressed a challenge to the

practice, in Providence, Rhode Island public schools, of inviting members of the clergy to

offer invocations and benedictions at middle school and high school graduation

ceremonies.  The <u>Lee</u> Court set the <u>Lemon</u> test aside in addressing that situation,

reasoning as follows:

> This case does not require us to revisit the difficult questions dividing us in
> recent cases, questions of the definition and full scope of the principles
> governing the extent of permitted accommodation by the State for the religious
> beliefs and practices of many of its citizens. For without reference to those
> principles in other contexts, the controlling precedents as they relate to prayer
> and religious exercise in primary and secondary public schools compel the
> holding here that the policy of the city of Providence is an unconstitutional
> one.

<u>Id.</u> at 586-87 (internal citations omitted).[1]

Focusing on the coercive nature of the prayers in that context, the Court in <u>Lee</u>

concluded that the prayer was not the product of free exercise but was a compelled

religious ceremony established by the school.  <u>Id.</u> at 587.  The Court had discussed, prior

---

[1]Citing cases such as <u>Lamb's Chapel v. Center Moriches Union Free School Dist.</u>, 508
U.S. 384 (1993), the District invites us to engage primarily in <u>Lemon</u> test analysis.  As the above
passage makes clear, however, the Supreme Court has narrowed the focus necessary for
addressing prayer in the public school context.  As the Supreme Court directs, we shall apply the
<u>Lee</u> analysis.

to <u>Lee</u>, the inherently coercive nature of religion in a school setting, <u>e.g.</u> <u>Edwards v.</u> <u>Aguillard</u>, 482 U.S. 578, 584 (1987), and it was this coercion that rendered the clergyman's prayer unconstitutional: "Finding no violation under these circumstances would place objectors in the dilemma of participating, with all that implies, or protesting . . . . [W]e think the State may not, consistent with the Establishment Clause, place primary and secondary school children in this position." <u>Lee</u>, 505 U.S. at 593.

In <u>Lee</u>, the lack of any legal requirement to attend graduation did not diminish the coerciveness of the prayer. The Court noted that, in every practical sense, attendance was nonetheless mandatory:

> it is apparent that a student is not free to absent herself from the graduation exercise in any real sense of the term "voluntary," for absence would require forfeiture of those intangible benefits which have motivated the student through youth and all her high school.

<u>Id.</u> at 595. Thus, because "the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice," the Court concluded that the prayer was unconstitutional. <u>Id.</u> at 596.

<u>Lee</u> therefore established that clergy-led graduation prayers, when marked with the imprimatur of a public school, violate the First Amendment:

> The sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as we have found, young graduates who object are induced to conform. No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise. That is being done here, and it is forbidden by the Establishment Clause of the First Amendment.

<u>Id.</u> at 599.

In addition to this limitation on clergy-led prayers, the Court has also made it clear that, at least in certain circumstances, student-led prayers are equally unconstitutional.  Santa Fe Indep. School Dist. v. Doe, 530 U.S. 290 (2000).  Guided by Lee, the Santa Fe Court first addressed whether the student-led prayer in that case constituted government speech.  The fact that the invocation was "authorized by a government policy" and took "place on government property at government-sponsored school-related events" did not automatically make such prayer government speech.  Id. at 302.  However, the school authorized the invocation and set the limitation of permitting only one student to give the prayer and thus failed to convert the ceremony into a public forum for private speech.  Therefore, the Court concluded that the prayer was government speech and subject to the prohibitions of the Establishment Clause.  Id. at 303, 306-07.

Building on this rationale, the Court reasoned that "the 'degree of school involvement' ma[de] it clear that the pregame prayers b[ore] 'the imprint of the State and thus put school-age children who objected in an untenable position.'" Id. at 305 (quoting Lee, 505 U.S. at 590).  The Court therefore concluded that the practice was unconstitutional because "[t]he mechanism encourage[d] divisiveness along religious lines in a public school setting, a result at odds with the Establishment Clause." Id. at 311.

In Santa Fe, the fact that the prayer was the result of a student vote did not insulate the practice from the Establishment Clause but, in fact, brought the school's sanction of

11

the prayer even closer to the core of the Clause's prohibition: "this student election does nothing to protect minority views but rather places the students who hold such views at the mercy of the majority."  Stressing that "fundamental rights may not be submitted to vote," the Court held that the school's elections were "insufficient safeguards of diverse student speech."  Id. at 304-05 (quoting West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624, 638 (1943)).  Accordingly, the "electoral mechanism" employed by the school "empower[ed] the student body majority with authority to subject students of minority views to constitutionally improper messages.  The award of that power alone, regardless of the students' ultimate use of it, is not acceptable."  Id. at 316.

The lesson flowing from this line of Supreme Court precedent to our case is that school-sanctioned graduation prayer in the secondary school context is unconstitutional when no public forum is offered, whether the ultimate decision to permit a prayer is made by the school itself or by a vote of the student body in an election process devised by the school.

The Greenwood prayer at issue here fits squarely into the prohibitions articulated by the Court in Lee and Santa Fe.  As in Lee, the prayer is a formal religious exercise at a public school graduation, and attendance at graduation is functionally obligatory, in particular for Mr. Workman, who as valedictorian of his class will be a speaker in the program.  Lee, 505 U.S. at 586.  Moreover, as in Santa Fe, the prayer planned for the upcoming Greenwood graduation is the direct result of an election, mandated by the School, where only one kind of message, a religious message, was presented to the

students as an option for inclusion in the program.  Santa Fe, 530 U.S. at 306.

Nonetheless, the District attempts to distinguish its circumstances from those in Lee and

Santa Fe on two grounds: (1) that it exercises less control over the prayer than the districts

in those cases; and (2) that the prayer is insulated from the constraints of the

Establishment Clause as either a "ceremonial" prayer or a private speech occurring in a

limited public forum.[2]

The District first asserts that it has not and does not exercise control over the

decision to offer a prayer.  This assertion is not supported by the uncontroverted facts,

which demonstrate beyond peradventure that Greenwood establishes the structure that

ultimately allows a class officer to offer a school-sanctioned prayer.  Pursuant to this

school-devised structure, seniors were taken out of class to attend a supervised assembly,

where the School presented them with written ballots asking them to vote (yes or no) on

whether to have a graduation prayer as part of the commencement ceremony.  The School

collected the ballots, tabulated them, and concluded, based on the election process chosen

by them (in which, as previously noted, a simple majority chooses, on a "yes" or "no"

basis, whether a "non-denominational" prayer will be given), that a class officer (again,

presumably a person selected by school administrators) would offer a formal prayer at the

2010 graduation ceremony.  The rule in Santa Fe could not apply more clearly or directly

---

[2]The District responds to the clear applicability of the rules of Lee and Santa Fe largely
by citing the dissenting opinions in those cases.  Although the District attributes significant
weight to the reasoning contained in those opinions, we are of course bound by the holdings of
the cases, as set forth in the majority or plurality opinions.

to this process.  In <u>Santa Fe</u>, responding to a mechanism virtually identical to that devised by Greenwood, the Supreme Court held that, "[a]lthough it is true that the ultimate choice of a student speaker is 'attributable to the students,' . . . the District's decision to hold the constitutionally problematic election is clearly a 'choice attributable to the State.'"  <u>Santa Fe</u>, 530 U.S. at 311 (quoting <u>Lee</u>, 505 U.S. at 587).

The District also contends that it has employed a more "hands off" approach with regard to the content of the message than the school in <u>Santa Fe</u>, but again the facts demonstrate otherwise.  Indeed, the District here exercises *more* control than did the defendant in <u>Santa Fe</u>.  In <u>Santa Fe</u>, the school employed a policy under which the student "who is selected by his or her classmates may decide what messages and/or invocation to deliver."  530 U.S. at 298.  The ballot in the case before us narrows the parameters of the message to an even greater extent, explicitly stating that the message will be a "non-denominational prayer."  No alternative option was put to the students.  Moreover, once the student chosen to deliver the prayer drafts his or her planned remarks, Greenwood High School's principal reviews those remarks to ensure that they are "generally appropriate to the style and tenor of the occasion."  Dec. of Kaylor ¶ 8.  Such a high level of state control over a prayer message to be given at a high school graduation is simply not consistent with or tolerated by the First Amendment.

The "electoral mechanism" employed by Greenwood clearly "empower[ed] the student body majority with authority to subject students of minority views to constitutionally improper messages."  <u>Santa Fe</u>, 530 U.S. at 316.  As the Supreme Court

has clearly declared, "The award of that power alone, regardless of the students' ultimate use of it, is not acceptable." Id. at 316. Contributing to these errors of Constitutional proportion is the high level of control over the process, from beginning to end, exerted by the School. "Finding no violation under these circumstances would place objectors in the dilemma of participating, with all that implies, or protesting . . . . [W]e think the State may not, consistent with the Establishment Clause, place primary and secondary school children in this position." Lee, 505 U.S. at 593.

In a final effort to circumvent the clear rule of Santa Fe, the District contends that the prayer here does not properly fall within the type of activity proscribed by the Establishment Clause. The District contends that the prayer that will be given is insulated from the Establishment Clause because it will constitute a "ceremonial prayer," which may be permissible under certain circumstances. See Tanford v. Brand, 104 F.3d 982 (7th Cir. 1997). In formulating this argument, however, Greenwood relies almost entirely on the *dissenting* opinion in Lee, which of course is not binding on this Court. Our responsibility is to follow the majority opinions in Supreme Court precedent, including Lee and Santa Fe, both of which dismissed similar arguments, holding that the "ceremonial prayer" exception does not apply in the secondary school context. Santa Fe, at 309 ("[R]egardless of whether one considers a sporting event an appropriate occasion for solemnity, the use of an invocation to foster such solemnity when, in actuality, it

constitutes prayer sponsored by the school."); <u>Lee</u>, 505 U.S. at 589.[3]  Accordingly, we

hold that the prayer at issue in this case clearly falls within the prohibitions articulated in

<u>Lee</u> and <u>Santa Fe</u>.

The District also attempts to remove the present case from the scope of <u>Lee</u> and

<u>Santa Fe</u> by asserting that the prayer that will be offered at its commencement ceremony

is not government speech, but rather constitutes private speech occurring in a limited

public forum.  Defendant's contention ignores the clear holding of <u>Santa Fe</u> to the

contrary: when a school authorizes an invocation and permits only one student to give a

prayer, it does not convert the ceremony into a public forum for private speech.  <u>Santa Fe</u>,

530 U.S. at 303.  Therefore, we conclude, as the <u>Santa Fe</u> Court also concluded, that this

prayer is and will be when and if it is delivered government speech and thus subject to the

proscriptions of the Establishment Clause.  <u>Id.</u> at 303, 306-07.

We accept the view underlying the decision in San<u>ta Fe and</u> agree with at least

one decision from a sister district court within the Seventh Circuit, to wit:

> Defendant's policy in this case shows a clear preference for prayer.  In fact,
> everyone . . . understood the issue to be whether a prayer would be said by a
> student at graduation, essentially an up-or-down vote on prayer . . .
> Defendant's policy is to have an invocation and benediction, which by their

---

[3]Furthermore, the District's reliance on <u>Tanford v. Brand</u>, 104 F.3d 982 (7th Cir. 1997), is misplaced.  Although in that case the court approved a ceremonial benediction, that holding rested on the fact that the challenger represented adult university students who in no way were compelled to attend the ceremony.  This bears a stark contrast to the present case, which regards a high school graduation.  As the <u>Lee</u> Court held, unlike college students, high school students deserve special protection from the influence of Establishment Clause violations.  Moreover, attending a high school graduation, unlike a university graduation, "in fair and real sense [is] obligatory."  <u>Lee</u>, 505 U.S. at 586.

very terms invite religious messages. Additionally, . . . similar to <u>Santa Fe</u>,
Defendant requires the volunteer student to submit his or her prayer to school
officials for content approval. Defendant has control over the ultimate
message being sent. . . . As in <u>Santa Fe</u>, the Court believes that a student
speech delivered pursuant to Defendant's policy would be viewed as a state-
sponsored prayer.

<u>Appenheimer v. School Bd. of Washington Community High School Dist. 308</u>, 2001 WL

1885834, at *10 (C.D. Ill. May 24, 2001) (citing <u>Santa Fe</u>, 530 U.S. at 306-310).[4]

Greenwood's graduation prayer practice, like the one in <u>Santa Fe</u>, "is invalid on its

face because it establishes an improper majoritarian election on religion, and

unquestionably has the purpose and creates the perception of encouraging the delivery of

prayer." <u>Id.</u> at 317. Under the circumstances of this case, were a prayer to be permitted

at the upcoming Greenwood graduation ceremony, it likely would be perceived "as a

public expression of the views of the majority of the student body delivered with the

approval of the school administration." <u>Id.</u> at 308.

The offering of prayer at a high school graduation does not, by itself, violate the

Establishment Clause. If, however, "the 'degree of school involvement makes it clear

that the [graduation] prayers bear 'the imprint of the state,' then a constitutional violation

---

[4]As the court in <u>Appenheimer</u> recognized, a case such as ours is easily distinguished from
a case relied upon heavily by the District, <u>Adler v. Duval County School Bd.</u>, 230 F.3d 1330
(11th Cir. 2001), in which the Eleventh Circuit upheld a school policy permitting the senior class
to elect a student speaker. Whereas, in <u>Adler</u>, the school simply invited the senior class to
choose a volunteer to give a "message" that was not "monitored or otherwise reviewed" by the
District, in the present case, Greenwood instigates and endorses a "non-denominational prayer"
and exercises significant control over the ultimate message. Thus, "<u>Adler</u> serves to highlight . . .
the similarities the instant action has with <u>Santa Fe</u>," and thus the unconstitutionality of the
School's policy. <u>Appenheimer</u>, 2001 WL 1885834, at *9.

has occurred." <u>Santa Fe</u>, 530 U.S. at 305 (quoting <u>Lee</u>, 505 U.S. at 590).  The policy in place at Greenwood purposefully encourages the delivery of a majority-sanctioned prayer at a "regularly scheduled, school-sponsored function conducted on school property."  <u>Id.</u> at 307.  That policy therefore violates the Constitution as an establishment of religion.

B.   *Irreparable Harm for which there is no Adequate Remedy at Law*

The violation of the First Amendment, for even "minimal periods of time," is "unquestionably . . . irreparable injury."  <u>Elrod v. Burns</u>, 427 U.S. 347, 373.  A finding of irreparable harm in a case such as this is clear: "If preliminary injunctions were not available in cases brought to enforce the establishment clause, government might be able to erode the values that the clause protects with a flood of temporary or intermittent infringements."  <u>American Civil Liberties Union of Ill. v. City of St. Charles</u>, 794 F.2d 265, 275 (7th Cir. 1986).   Indeed, "[i]t has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law."  <u>Cohen v. Coahoma County, Miss.</u>, 805 F.Supp. 398, 406 (N.D. Miss. 1992).  We therefore find that Mr. Workman is threatened by an irreparable harm, and that no other adequate legal remedy can safeguard him from the Establishment Clause violation in this case.

C.   *Balance of Harm*

Against the certain and irreparable harm that will befall Mr. Workman if the

District's prayer procedures come to their expected conclusion is only the "harm" in the form of inconvenience that will be experienced by the District in altering its graduation ceremony in this relatively minor way.  The First Amendment injury to Mr. Workman clearly outweighs the District's minimal harm.

D.      *Public Interest*

"[I]t is always in the public interest to protect First Amendment liberties."  <u>Joelner v. Village of Washington Park, Ill.</u>, 378 F.3d 613, 620 (7th Cir. 2004) (quoting <u>Connection Distrib. Co. v. Reno</u>, 154 F.3d 281, 288 (6th Cir. 1998)).  Because Mr. Workman has demonstrated the likelihood that his claim that Greenwood has violated the First Amendment will succeed, the public interest will be served by the grant of his Motion for Preliminary Injunction.

E.      *Bond*

Greenwood is not facing any monetary injury if an injunction issues.  In the absence of such an injury, no bond is required.  <u>E.g.</u> <u>Doctor's Associates, Inc. v. Stuart</u>, 85 F.3d 975, 983 (2d Cir. 1996).

**III.    *Conclusion***

For the reasons detailed in this entry, the process in place permitting a student-led prayer at Greenwood High School represents a clear violation of the Establishment

Clause of the First Amendment, as does the delivery of a specific prayer set to occur as the result of that process during the upcoming 2010 graduation ceremony.  Plaintiff's Motion for Preliminary Injunction is therefore GRANTED.

Defendants, Greenwood Community School Corporation and the Principal of Greenwood High School, as well as all of their agents, servants, and employees, are hereby PRELIMINARILY RESTRAINED from permitting the planned student-led prayer or invocation arising from the election of the senior class, or any other school-endorsed prayer, to occur at the upcoming May 28, 2010 Greenwood High School graduation ceremony.  Notice of this order shall be distributed forthwith, well in advance of the scheduled graduation ceremony, to all District faculty, administrators, staff and employees as well as to the individual students/members of the 2010 graduating class, and their parents, guardians, or other responsible adults.

IT IS SO ORDERED.

Date:   04/30/2010

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Copies to:

Michelle Lynn Cooper
BOSE MCKINNEY & EVANS, LLP
mcooper@boselaw.com

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Judy L. Woods
BOSE MCKINNEY & EVANS, LLP
jwoods@boselaw.com